IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


TEDDY S. STOKES,
    Petitioner,

vs.                                             Case No.: 3:05cv324/MCR/EMT

JAMES R. McDONOUGH,
    Respondent.
_____/

### **REPORT AND RECOMMENDATION**

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Docs. 13, 15). Petitioner filed a reply (Doc. 17).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The procedural background of this case is undisputed by the parties and established by the state court record. Following a jury trial in the Circuit Court for Santa Rosa County, Florida on July 27–29, 1999, Petitioner was convicted of first degree murder or felony murder with a weapon and armed robbery with a firearm for the armed robbery and shooting of Mallie Ellis Barnard (*see* Doc. 15, Exs. A, B). He was sentenced on July 30, 1999, to consecutive sentences of life imprisonment without the possibility of parole for first degree murder and life imprisonment for armed robbery

(*id.*, Ex. B at 97–103). Petitioner was also sentenced to three years for using a firearm during the commission of a crime; this three year sentence was imposed to run concurrent with Petitioner's life-sentence for first degree murder (*id.*, Ex. B at 102). Petitioner appealed his conviction and sentence to the First District Court of Appeal of Florida ("First DCA") (*id.*, Ex. C). The appellate court affirmed the conviction and sentence per curiam without opinion on August 23, 2000, with the mandate issuing September 8, 2000 (*id.*, Ex. D). Stokes v. State, 767 So. 2d 1211 (Fla. 1st DCA 2000) (Table).

On March 30, 2001, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 15, Ex. G at 1–138). Petitioner raised four claims of trial court error, one claim of tampered evidence, and fourteen claims of ineffective assistance of trial counsel (*id.*, Ex. G at 10–80), including that trial counsel failed to file a motion to suppress evidence obtained during a search of Petitioner's home (*id.*, Ex. G at 69–73). On February 7, 2002, Petitioner filed an amendment to his Rule 3.850 motion, adding a claim that his counsel was ineffective for failing to make the trial court aware of an ambiguity in the jury form (*id.*, Ex. G at 244–56).

On May 14, 2002, the trial court summarily denied all but three of Petitioner's claims, including Petitioner's claim that counsel was ineffective for failing to file a motion to suppress evidence obtained during a search of Petitioner's home (*id.*, Ex. G at 283–84, 291). Three ineffective assistance of counsel claims were set for an evidentiary hearing (*id.*, Ex. G at 283–84, 291). The court deferred ruling on Petitioner's claim that cumulative errors by counsel rendered his trial fundamentally unfair (*id.*, Ex. G at 290). In the three claims set for an evidentiary hearing, Petitioner alleged ineffective assistance of counsel due to trial counsel's (1) failure to investigate and call witnesses, (2) failure to permit Petitioner to testify, and (3) failure to obtain independent DNA analysis (*id.*, Ex. G at 278–80, 281–82, 284–85).

During the pendency of his Rule 3.850 motion in the trial court, on August 12, 2002, Petitioner filed a petition with the First DCA alleging ineffective assistance of appellate counsel (Doc. 15, Ex. E). The First DCA denied Petitioner relief per curiam without written opinion on September 4, 2002 (*id.*, Ex. F). Stokes v. State, 827 So. 2d 983 (Fla. 1st DCA 2002) (Table).

On August 21, 2002, Petitioner filed a supplement to his amended motion for post-conviction relief with the trial court, adding two ineffective assistance of trial counsel claims (Doc. 15, Ex. G at 868–74). The trial court summarily denied these claims on September 9, 2002 (*id.*, Ex. G at 881–83).

Following an evidentiary hearing on the four remaining claims, the trial court denied relief on September 3, 2003 (*id.*, Ex. G at 959–66). Petitioner appealed to the First DCA (*id.*, Ex. G at 1235–36). On November 18, 2004, the First DCA affirmed the trial court's ruling on Petitioner's motion for post-conviction relief (*id.*, Ex. H). Stokes v. State, 892 So. 2d 480 (Fla. 1st DCA 2004) (Table).

Petitioner filed the instant habeas action on August 16, 2005 (Doc. 1 at 15). Respondent concedes that the petition is timely (Doc. 13 at 3).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional

error."  Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

III.     EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas

---

[2]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
  (A)  the applicant has exhausted the remedies available in the courts of the State; or
  (B) (i)  there is an absence of available State corrective process; or
      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." *Id.* (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.* at 7 & n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364 (1995). The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Id.* at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in

---

[3]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's

---

[4]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.* A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5] *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

A petitioner can overcome a procedural default in two narrow circumstances. The petitioner must either show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Henderson v. Haley, 353 F.3d 880, 892 (11th Cir. 2003); Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. Furthermore, the Eleventh Circuit has held that because there is no constitutional right to an attorney in state post-conviction proceedings, any ineffectiveness of post-conviction counsel cannot be "considered cause for the purposes of excusing

---

[5]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1301–02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Case No.: 3:05cv324/MCR/EMT

. . . procedural default that occur[s] . . . at the state collateral post-conviction level." Henderson, 353 F.3d 892 (citing 28. U.S.C. § 2254(i); Coleman v. Thompson, 501 U.S. 722, 752 (1991); In re Magwood, 113 F.3d 1544, 1551 (11th Cir. 1997); Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991)). To establish prejudice, a petitioner must show that there is "at least a reasonable probability that the result of the proceeding would have been different." *Id.*

Alternatively, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further,

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.     PETITIONER'S CLAIMS

   A.     Ground One: Ineffective Assistance of Counsel for Counsel's Failure to Challenge Petitioner's Statements as Involuntary When Detective's Used Petitioner's Wife Against Him as a Psychological Coercion Technique Rendering His Statements Violative of Petitioner's Fifth Amendment Right

Petitioner contends that his trial counsel was ineffective for failing to challenge the use of his wife as a means of psychological coercion during his interrogation by police (Doc. 1 at 7–9). Respondent argues that Petitioner did not properly exhaust this ground below, and it is now procedurally defaulted (Doc. 13 at 12–14). Further, Respondent argues that Petitioner has not offered any cause for his failure to properly present the claim to the state court nor has he established the requisite prejudice to proceed under any exception to exhaustion and default requirements (*see id.* at 13).

As summarized in Bailey v. Nagle, 172 F.3d 1299 (11th Cir. 1999), a state habeas petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the

same claim in federal court absent a showing of cause for and actual prejudice from the default, or that a fundamental miscarriage of justice will result. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994). A state court decision based on state law grounds that are independent of federal law and adequate to support the judgment may create a procedural default barring federal habeas review. Coleman, 501 U.S. at 729. Thus, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the federal claims are barred, the federal court shall respect that decision. Nagle, 172 F.3d 1299 (citing Atkins v. Singletary, 965 F.2d 952, 956 (11th Cir. 1992)). In reviewing the state court's judgment, this court must ask whether the last state court to consider the claim(s) clearly and expressly stated that its judgment rested on a procedural bar, meaning, an adequate and independent state ground. Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989). Furthermore, an appellate court's per curiam affirmance of a decision that is based on a procedural bar is deemed to affirm the procedural bar. Yist v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991); Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990).

To establish "cause" sufficient to overcome the procedural bar, Petitioner must show the existence of "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim" which prevented him from raising the claim. McCleskey, 499 U.S. at 497 (quoting Murray, 477 U.S. at 488). In order to show prejudice, Petitioner must show not merely that the error created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions. *See* United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982).

In the instant case, in ground IV(B) of Petitioner's motion for post-conviction relief, he claimed "that the trial court erred for [sic] admitting a coerced confession gained by the use of psychological coercion" (Doc. 15, Ex. G at 23) (emphasis supplied). Petitioner did not claim that trial counsel was ineffective for failing to challenge the admission of Petitioner's statement (*see id.*, Ex. G at 18–26). In resolving this claim, the state court found that the record showed that trial counsel filed a motion seeking to suppress Petitioner's statements and the evidence collected as a

result of those statements (*see id.*, Ex. G at 275–76). The state court also found that trial counsel's motion to suppress Petitioner's allegedly coerced statements was partially granted (*id.*, Ex. G at 276). Finally, the state court found that Petitioner's claim of trial court error was procedurally barred because Petitioner should have raised this issue on direct appeal but failed to do so (*id.*, Ex. G at 276 (citing Patton v. State, 784 So. 2d 380, 386 (Fla. 2000) (finding defendant procedurally barred in a Rule 3.850 motion from raising various claims which were or should have been raised on direct appeal, including trial court's failure to suppress statements that were allegedly illegally obtained)). Thus, it would appear that Petitioner failed to exhaust this claim in the state courts (*see* Doc. 15, Ex. G at 18–26, 275–76).

Furthermore, subsequent to Respondent's answer and Petitioner's reply in the instant case, Petitioner filed a Motion for Leave to Amend Petitioner's 28 U.S.C. § 2254 Petition (Doc. 18). In this motion, Petitioner conceded that Ground One of his habeas petition (ineffectiveness of trial counsel) was not properly exhausted and is procedurally barred in state court (*see* Doc. 18 at 4). Petitioner, among other things, sought to amend Ground One (*see id.* at 4–6). In response, Respondent argued that Petitioner's amended Ground One did not properly relate back to his original Ground One (*see* Doc. 20 at 4–7). Further, Respondent argued the amended petition would be untimely; thus, Respondent urged this court to deny Petitioner's motion (*see id.* at 3–7). The court agreed and denied Petitioner's motion to amend Ground One (*see* Doc. 22). After Petitioner's motion for reconsideration of the order denying his motion to amend was denied (*see* Docs. 23, 24), Petitioner filed a Motion to Voluntarily Dismiss Claim One and to Reserve His Right to Appeal the Denial of His Motion to Amend Claim One (Doc. 25). The court denied Petitioner's motion and advised Petitioner that if he wished to seek further review of the court's order denying his motion to amend his habeas petition, that he should file a motion for reconsideration with the district court pursuant to 28 U.S.C. § 636(b)(1)(A) (*see* Doc. 27 at 1–2). Subsequently, Petitioner filed a "Motion to Voluntarily Dismiss Claim One of Original § 2254 Petition" (Doc. 28). Respondent did not object to voluntary dismissal of Ground One (*see* Doc. 32), and this court granted Petitioner's motion to voluntarily dismiss Ground One (*see* Doc. 35).

In sum, Petitioner has conceded that Ground One of the instant habeas petition was not properly exhausted and is procedurally barred in state court (Doc. 18 at 4). Moreover, a review of

the record indicates that this claim was not presented below (*see, e.g.*, Doc. 15, Ex. G at 18–26, 275–76). Finally, Ground One was voluntarily dismissed by Petitioner (*see* Doc. 35). Therefore, Ground One will not be considered further.

      B.      <u>Ground Two: Whether Counsel Was Ineffective When He Failed to File a Motion to Suppress or Otherwise Challenge, the Illegal Search and Seizure of Stokes' Rented Property in Violation of Stokes' Fourth Amendment Right</u>

Petitioner alleges that trial counsel was ineffective for failing to move to suppress evidence obtained from Petitioner's property without a search warrant (Doc. 1 at 10–15). Petitioner alleges that he was leasing the searched premises from Elvin Lovins, Sr. pursuant to the terms of an oral lease (*id.* at 10). Petitioner further alleges that on May 8, 1998 at about 9:00 a.m., police removed Petitioner and his wife from the premises and took them to the sheriff's office for questioning (*id.* at 10–11). At about 2:00 p.m., Petitioner alleges that police obtained consent from Mr. Lovins, Sr.'s daughter-in-law to search the landlord's property (*id.* at 11). Later in the day, Petitioner alleges that police also obtained consent to search the landlord's property from Elvin Lovins, Jr., the landlord's son (*id.*). Around 4:45 p.m., Petitioner alleges that officers located and searched a shed located on the landlord's property adjacent to the property that Petitioner leased (*see id.*). In this shed, officers found a large sum of money linking Petitioner to the robbery and murder of Mr. Barnard (*see id.*). Petitioner states that he and his wife both signed forms consenting to the search of their premises, but only after the search occurred and on the understanding that the money had already been found in the shed adjacent to Petitioner's property (*id.* at 11–12). Petitioner alleges that he informed trial counsel during the pretrial stages that the seizure of this evidence should be contested in a motion to suppress (*id.* at 12). He states that trial counsel informed him that he did not have standing to challenge the search (*id.*). Petitioner opines that trial counsel was ineffective for failing to challenge the validity of this search (*id.*).

Respondent states that Petitioner exhausted this claim by raising it in his first Rule 3.850 motion (*see* Doc. 13 at 14; Doc. 15, Ex. G at 69–73).

      1.      Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under <u>Strickland</u>, a petitioner must show (1) deficient performance by counsel and (2) a reasonable

probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof. *Id.* at 687. If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

> In determining whether counsel's performance was reasonable, the Court instructed:
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693. However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

        2.       Federal Review of State Court Decision

In a written opinion denying this claim, the state court identified the Strickland standard as the applicable standard for evaluating claims of ineffective assistance of counsel (Doc. 15, Ex. G at 277). The state court noted that Petitioner alleged trial counsel was ineffective for failing to move to suppress the money seized on Petitioner's property (*id.*, Ex. G at 283). The state court, however, found as fact that the trial record reflected that the money was actually seized in a shed located outside of the property leased by Petitioner (*id.*). Furthermore, the trial court found that both Mr. Lovins, Jr. and his wife, the landlord's son and daughter-in-law respectively, gave police consent to search the landlord's property (*id.*). The trial court found that Petitioner did not allege a privacy interest in the shed where the money was located, and thus he was without standing to challenge the seizure (*id.* at 284 (citing State v. Fisher, 529 So. 2d 1256 (Fla. 3d DCA 1988) (finding that defendant lacked reasonable expectation of privacy in an abandoned house); Rodriguez v. State, 468 So. 2d 312 (Fla. 1st DCA 1985) (noting that Fourth Amendment rights may not be asserted

vicariously)).  Accordingly, the trial court found that counsel could not be ineffective for failing to raise a meritless issue and denied Petitioner's claim (Doc. 15, Ex. G at 284).

As previously noted, the state court correctly identified the two-prong Strickland standard as applicable to claims of ineffective assistance of counsel (*id.*, Ex. G at 277).  Additionally, the state court's factual findings are presumed correct, as Petitioner has failed to rebut those findings with clear and convincing evidence.  Therefore, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable application of Strickland.

With regard to counsel's performance, the Eleventh Circuit has stated:

> Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991).  Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462.

"To obtain relief where an ineffective assistance of counsel claim is based on counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582–83, 91 L .Ed. 2d 305 (1986)).

In the instant case, it is not necessary to consider the third prong of the three-prong test, because Petitioner has failed to establish that defense counsel's representation was unreasonable and that the Fourth Amendment claim was meritorious. Petitioner alleged that trial counsel told him "that [he] had no standing to challenge the search and seizure because the landowner's son gave the officer consent to search" the landowner's property (Doc. 1 at 12). Indeed, the trial transcript demonstrates that that police first obtained consent to search the shed where the money was found from the landlord's daughter-in-law (Doc. 15, Ex. A at 483). Later, the police also obtained consent to search the landlord's property from Mr. Lovins, Jr., the landlord's son (*id.*, Ex. A at 484). Mr. Lovins, Jr. and his wife also signed written consent-to-search forms (*id.*, Ex. A at 490, 496). The trial transcript establishes that Mr. Lovins, Sr. was out of the state when consent to search was obtained from Mr. Lovins, Jr. and his wife (*id.*, Ex. A at 483). The trial transcript also establishes that the shed was located on property owned by Mr. Lovins, Sr. and was outside of the area leased by Petitioner (*id.*, Ex. A at 495–96, 886–87).

Generally a warrantless search is per se unreasonable under the Fourth Amendment. *See* Art. I, § 12, Fla. Const.(1968); Washington v. State, 653 So. 2d 362, 364 (Fla. 1994); Potts v. Johnson, 654 So. 2d 596, 599 (Fla. 3d DCA 1995). Consent is recognized as a valid exception to the warrant requirement. *See* Jorgenson v. State, 714 So. 2d 423, 426 (Fla. 1998) (noting that "a search will be considered lawful if conducted pursuant to consent which was given freely and voluntarily"); Norman v. State, 379 So. 2d 643, 646 (Fla. 1980); Potts, 654 So. 2d at 599. The Supreme Court has explained that persons generally having joint access, common authority over, or a sufficient relationship to a premises may consent to a search of that premises. *See* United States v. Matlock, 415 U.S. 164, 171 (1974) (explaining that authority to consent to a search arises from the mutual use

of the property by persons generally having joint access, common authority over, or other sufficient relationship to the premises or effects to be inspected); Saavedra v. State, 622 So. 2d 952, 957 (Fla. 1993) (adopting the common authority test set out in Matlock). The Florida Supreme Court explained in Saavedra that Florida courts should focus on whether the police officer had a reasonable belief based on articulable facts that the consenting party shared joint authority over the premises with the absent party. *See* Saavedra, 622 So. 2d at 957–58 (citing Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) (noting that the "determination of consent to enter must be judged against an objective standard: would facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises" (internal quotations and citations omitted))). Furthermore, it is well established that Fourth Amendment rights may not be asserted vicariously (Doc. 15, Ex. G at 284 (citing Rodriguez, 468 So. 2d at 413)). *See, e.g.*, Acebo v. State, 415 So. 2d 909, 910 (Fla. 2d DCA 1982) (Fourth Amendment rights are personal rights which may not be vicariously asserted) (citing Rakas v. Illinois, 439 U.S. 128, 133–34 (1978); Brown v. United States, 411 U.S. 223, 230 (1973)).

As trial counsel properly advised Petitioner, police lawfully searched property owned by Mr. Lovins, Sr. upon the consent of Mr. Lovins, Sr.'s son and daughter-in-law (*see* Doc. 1 at 12). It would have been reasonable for the officers to believe that Mr. Lovins, Sr.'s son had authority over the premises. Thus, because proper consent was obtained, this search was not in violation of the Fourth Amendment. *See* Jorgenson, 714 So. 2d at 426; Saavedra, 622 So. 2d at 957; Norman, 379 So. 2d at 646; Potts, 654 So. 2d at 599. However, even if the officers' belief regarding the son's authority was deemed unreasonable, Petitioner lacked standing to challenge the search of the shed. Petitioner has failed to allege facts showing that he had a privacy interest in the shed, and he cannot vicariously maintain a Fourth Amendment challenge to the officers' search of Mr. Lovins, Sr.'s shed. *See* Rodriguez, 468 So. 2d at 413; Acebo, 415 So. 2d at 910. Accordingly, as the trial court found, counsel's advice to Petitioner was not below any objective standard of reasonableness. Thus, Petitioner is not entitled to habeas corpus relief.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 15th day of May 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>, **858 F.2d 698, 701 (11th Cir. 1988).**